IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRYSTAL M. BROOKS,

      Plaintiff,

 v.

ANDREW M. SAUL, Commissioner of
Social Security,

      Defendant.

OPINION AND ORDER

17-cv-699-wmc

---

  Claimant Krystal M. Brooks seeks judicial review of a final decision of defendant Andrew M. Saul, the Commissioner of Social Security, under 42 U.S.C. § 405(g), which denied her application for disability and supplemental security income. On appeal, Brooks argues that the ALJ failed to properly: (1) weigh medical opinion evidence; and (2) evaluate her testimony. She subsequently requested remand for a new hearing because the ALJ was not constitutionally appointed at the time of the decision. For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

  In 2014, Brooks filed claims for disability and supplemental security income, alleging an onset date of February 1, 2014. After her claims were denied initially and on reconsideration, Brooks requested a hearing on June 16, 2015. On April 4, 2017, Brooks appeared before ALJ Debra Meachum. ALJ Meachum concluded that Brooks was not disabled in a decision dated April 20, 2017. (AR 26.)

## A. Medical Report and Reports

Brooks' treating psychiatrist, Meredith Holbrook, wrote a letter on April 15, 2014, which identified four diagnoses: (1) major depression, recurrent; (2) chronic PTSD; (3) generalized anxiety disorder; and (4) attention deficit hyperactivity disorder, all of which impacted "mood, cognition, (attentional and concentration functions), ability to tolerate stress, ability to relate in social situations, energy and motivation." (AR 298.) Holbrook reported that Brooks was "overwhelmed by the prospect of working at this time" and that she would "likely . . . be in a place to work in the next year." (*Id.*)

Dr. Holbrook submitted an additional letter on September 9, 2014, which basically laid out her diagnoses and stated that claimant was "being seen on a monthly basis and [wa]s compliant with her appointments." (AR 367.) That same day, her psychotherapist, Linda Renn, MS, CISW, wrote a brief letter detailing that "Brooks is seen for psychotherapy twice a month for ADHD; Generalized anxiety disorder; major depressive disorder, recurrent, severe without psychotic behavior and post-traumatic stress disorder, chronic." (AR 461.)

Dr. Holbrook wrote another letter on Brooks' behalf on May 6, 2015, explaining that (1) Brooks' "disorder[s] affect[] mood, cognition, (attention and concentration functions), ability to tolerate stress, ability to relate in social situations, energy and motivation"; (2) she had "quit her last job due to interference from her symptoms," was "overwhelmed by the prospect of working at this time," and "remain[ed] unable to work"; and (3) she was "fully disabled" and would require "at least 1 year" off work, and that period might become "indefinite." (AR 464.) Dr. Holbrook submitted another letter on

November 17, 2015. She noted that she had "been treating [Brooks] on a monthly basis since 2013." (AR 615.) She explained that "Ms. Brooks has had difficulties tolerating medications aimed toward treating her PTSD and depression," but that she was "receiving some benefit from her medications," yet was "still quite impaired on a daily basis, making it difficult for her to maintain an even mood, interact with others, or focus without exacerbation of her psychiatric symptoms." (*Id.*) Holbrook opined that Brooks was "incapable of sustaining gainful employment" and "[h]er symptoms . . . are unlikely to resolve adequately in at least the next 12 months or the foreseeable future." (*Id.*)

Dr. Holbrook completed a mental impairment questionnaire about Brooks on March 29, 2016. Holbrook identified some of Brooks' symptoms as "[d]ifficulty thinking or concentrating"; "[e]asy distractability"; "[s]ocial withdrawal or isolation"; "[h]yperactivity"; "pervasive loss of interests"; and "[d]eeply ingrained, maladaptive patterns of behavior." (AR 617.) She considered "[h]ypervigilence, insomnia, irritability, [and] difficulties w/ social interactions / mistrust" to be Brooks' most frequent or severe symptoms. (AR 618.) Holbrook added that Brooks "has tried to work on several occasions resulting in exacerbation of sxs/ w/drawal." (*Id.*) As to Brooks' mental functioning, Holbrook opined that she would have "Marked" limitation in her ability to: (1) "Work in coordination with or near others without being distracted by them"; (2) "Complete a workday without interruptions from psychological symptoms"; (3) "Interact appropriately with the public"; (4) "Ask simple questions or request assistance"; (5) Accept instructions and respond appropriately to criticism from supervisors"; (6) "Get along with coworkers or peers without distracting them"; and (7) "Respond appropriately to workplace changes."

3

(AR 619.) Dr. Holbrook noted a number of less severe limitations, but also professed to not knowing about whether Brooks had limitations in twelve different activities. (*Id.*) Holbrook opined that Brooks' symptoms and limitations applied on February 1, 2014. (AR 620.) Holbrook completed an "updated" version of this mental impairment questionnaire on February 22, 2017, but most of it is blank. (*See* AR 696-700.) It directs the reader to "[p]lease refer to previous document." (AR 696.) The only substantive information on the form is Dr. Holbrook's note that Brooks "has experience[d] ↑ed auditory hallucinations. Has upcoming neuro appt. I can request independent psychological eval." (AR 700.)

Brooks' records were reviewed by state agency psychologists Jack Spear and Mike Dow on September 16, 2014, and May 26, 2015, respectively. They agreed that Brooks had no restrictions on activities of daily living, nor any repeated episodes of decompensation; only moderate difficulties in maintaining concentration, persistence or pace and maintaining social functioning. (AR 73-74, 102.) They likewise agreed that she was "capable of learning, remembering & carrying out simple instructions." (AR 76, 105.) They found that she was "Not significantly limited" in her ability to: (1) "carry out very short and simple instructions"; (2) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; (3) "sustain an ordinary routine without special supervision"; (4) "make simple work-related decisions"; and (5) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*) Likewise, they opined that she was "Moderately limited" in her

ability to: (1) "carry out detailed instructions"; (2) "maintain attention and concentration for extended periods"; and (3) "work in coordination with or in proximity to others without being distracted by them." (*Id.*) They agreed that she had social interaction limitations: (1) she was "Moderately limited" in her ability to: (a) "interact appropriately with the general public"; (b) "accept instructions and respond appropriately to criticism from supervisors"; and (c) "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; and (2) "Not significantly limited" in her ability to: (a) "ask simple questions or request assistance" and (b) "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (AR 76-77, 106.) Finally, they opined that Brooks "has moderate difficulty adjusting to increased mental demand and change in routine" based on the fact that she "independently" completed her activities of daily living. (AR 77, 106.)

### B. Claimant's Hearing Testimony

At the time of her hearing, Brooks worked part-time at Menard's stocking shelves. (AR 51.) There, she had only occasional contact with customers, adding that if she could not "deal with it" she could "kind of find somebody else to help them." (*Id.*) In the six months prior to her hearing, she had missed approximately six days of work and had left early "numerous, numerous times." (*Id.*; *see also* AR 60-61 (explaining that when she leaves early, she leaves significantly early).) After starting work, she has found her symptoms of PTSD and depression "a little bit harder to deal with." (AR 54-55.) She returned to work after her husband lost his job; she said she "had to step up." (AR 52.) She testified that she would "have to do what's necessary to support [her] children" and that "[i]f [she] had

to" she could work more hours. (AR 53.)

Additionally, she testified that she does household shopping approximately once a month; handles cooking, cleaning and laundry; picks her son up from his extracurricular activities; and assists with household finances. (AR 53-54.) She said that she does not normally spend time with friends and family outside her home because of stress. (AR 54.)

**C. ALJ's Decision**

ALJ Meachum issued a decision unfavorable to Brooks on April 20, 2017. (AR 26.) The ALJ found that Brooks had three severe impairments that "cause[d] significant limitations in claimant's ability to perform basic work activities": attention deficit hyperactivity, affective, and anxiety disorders.[1] (AR 19.) These impairments, together or separately, did not meet or equal a listed impairment. (AR 19-20.) She noted that while claimant had worked after her alleged onset date of February 1, 2014, this activity failed to "rise to the level of substantial gainful activity." (AR 18.)

The ALJ found treating psychiatrist, Dr. Holbrook's opinion that claimant had some marked limitations in certain work abilities to be inconsistent with other evidence in the record, such as "essentially normal findings on mental status examinations" and Brooks' activities, such as off-roading, hiking, camping, laundry, cleaning, cooking, shopping, handling her children, working part-time, and managing household finances. (AR 20.) The ALJ concluded that the record "show[ed] that the claimant has mild limitations in

---

[1] The ALJ declined to find substance abuse disorder was a severe impairment because Brooks did not establish that specific diagnosis. (AR 19.)

6

understanding, remembering, or applying information and adapting and managing [her]self," as well as "moderate limitations in interacting with others" and concentration, persistence and pace. (AR 20-21.) Based on this assessment, ALJ Meachum concluded that Brooks could "perform a full range of work at all exertional levels," but was "limited to unskilled work involving simple routine repetitive tasks. She cannot engage in fast-paced production line or tandem tasks." (AR 21.) Claimant could "deal with occasional changes in the work setting and only occasional interaction with others." (*Id.*)

ALJ Meachum concluded that Brooks' "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but her "statements concerning any disabling intensity, persistence and limiting effects . . . are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.) This conclusion was based on: (1) claimant's activities, including her part-time work; and indication that she would attempt to get more hours; (2) the inconsistency between her recent reports of hallucinations and the record, as the hallucinations reportedly started shortly before the hearing; (3) her mental status evaluations being "largely normal and benign," showing "clinically intact attention and concentration, generally appropriate affect; coherent, logical, and goal directed thought process and language; normal motor functioning and thought content; no danger to self or others; and fair insight and judgment"; (4) medical records reported shared, lost and sold medications; and (5) "claimant's limited work history suggests that her reasons for not working may be for reasons other than her alleged disability," as only in 2007 and 2012 did her earnings approach substantial gainful activity. (AR 22-24.)

ALJ Meachum gave "great weight" to the opinions of state agency psychologists, Jack Spear and Mike Dow. (AR 19.) They determined claimant could perform unskilled work but found "moderate difficulties with concentration and persistence, problems with more than occasional contact with others, intact cognition, and capability for doing simple work involving simple decisions." (AR 24.) The ALJ explained that she "included specific limitations" to account for the moderate mental limitations the state agency psychologists found: "in limiting the claimant to a range of unskilled work involving simple, routine, and repetitive tasks; no fast-paced or production line or tandem tasks; only occasionally changes in the work setting; and only occasional interaction with others." (AR 24.)

The opinions of claimant's treating psychiatrist, Dr. Meredith Holbrook, on the other hand, were given "only partial weight . . . and only to the extent each is consistent with the overall record . . . and the residual functional capacity for the limited range of unskilled work assesse[d i]n th[e ALJ's] decision." (AR 23.) In 2014, Holbrook opined that claimant would likely be able to return to work within a year and reported seeing claimant monthly; the ALJ concluded that such "statements do not endorse significant limitations." (*Id.*) In 2015, Holbrook opined that Brooks was completely disabled and would need to be off work for at least a year; the ALJ found this opinion conclusory and unsupported. (*Id.*) In 2016, Holbrook noted that claimant had attempted working, but that this made her symptoms worse, "suggesting very significant marked limitations in distractability and social interaction," yet "claimed no knowledge regarding many of the other relevant mental work attributes." (*Id.*) In 2017, Holbrook submitted a "largely blank" statement that "references her prior report," notes Brooks' "recently reported

8

hallucinations," and "suggest[s] that an independent psychological evaluation be performed." (AR 24.)[2]

OPINION

Before the court can address claimant's substantive (and developed) arguments, it must first consider whether the Supreme Court's 2018 decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), requires remand. On October 4, 2018, claimant filed a notice of supplemental authority pointing the court to *Lucia*, "object[ing] to the decision by the ALJ on the grounds that it was decided by an ALJ who was not constitutionally appointed at the time of the decision in this case." (Dkt. #10 at 1.) Acknowledging that claimant had not raised this objection previously, she argued that "ordinary rules of waiver do not apply in Social Security proceedings" so that "objections to an Agency decision can be made on any grounds for the first time in the District Court." (*Id.* (citing *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000)).) Other district courts faced with this question, however, have concluded that social security claimants who failed to raise an Appointments Clause challenge during the administrative proceedings have forfeited it. *See e.g.*, *Garrison v. Berryhill*, No. 1:17-cv-00302-FDW, at *2 (W.D.N.C. Oct. 10, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings."); *Davidson v. Comm'r of Soc. Sec.*, No. 2:16-cv-00102, at *2

---

[2] The ALJ rejected Dr. Holbrook's suggestion of engaging an independent psychological evaluator because she found the record "more than adequate to assess the claimant's mental functioning during the relevant period." (AR 24.) Additionally, claimant also saw Lisa Renn, M.S., who did not specifically opine on claimant's work capabilities; ALJ Meachum gave her opinion "some weight with regard to the diagnoses of record." (*Id.*)

9

(M.D. Tenn. Sept. 28, 2018) (concluding plaintiff waived challenge to the appointment of ALJ because she failed to raise it at the administrative level); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018) (citing *Trejo v. Berryhill*, Case No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018)) (finding forfeiture of Appointments Clause challenges not raised during administrative proceedings was "consistent with *Lucia*, *Sims*, *Anderson* [*v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003)] and *Harwood* [*v. Apfel*, 186 F.3d 1039, 1043 n.3 (8th Cir. 1999)]"); *Iwan v. Comm'r of Soc. Sec.*, No. 17-cv-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) (holding that claimant's Appointments Clause argument was waived by failure to present it during the administrative proceedings).[3] The court sees no reason to diverge from these holdings. Accordingly, the court rejects that basis for remand and will turn its attention to claimant's other arguments.

Claimant raises two substantive issues that she contends warrant remand: (1) the ALJ improperly weighed the medical opinion evidence in the record; and (2) the ALJ improperly analyzed her testimony. In reviewing a final decision of the Commissioner, the court considers whether the decision was supported by substantial evidence -- "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" -- whether the ALJ had "buil[t] a logical bridge from the evidence to her conclusion," and whether the ALJ committed an error of law. *See Stephens v. Berryhill*, 888 F.3d 323, 327

---

[3] The court recognizes that the Seventh Circuit has not yet concluded whether *Sims* should be extended to issues not raised during an administrative hearing. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (noting that the First Circuit in *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001), "declined to extend *Sims* to the administrative hearing" but whether *Sims* was applicable to administrative hearings remains an open question in the Seventh Circuit).

(7th Cir. 2018) (internal citations omitted). During its review, the court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled," yet the review "is not intended to be a rubber-stamp on the Commissioner's decision." *Id.* (internal citations omitted).

### A. Weighing Medical Opinion Evidence

First, claimant contends that the ALJ improperly assigned only "partial weight" to the mental limitations opinions provided by claimant's psychiatrist, Dr. Meredith Holbrook, in March 2016 and February 2017. (Pl.'s Br. (dkt. #7) 11-12.) Specifically, the claimant faults ALJ Meachum for: (1) "fail[ing] to state what limitations . . . were credited or rejected and why," offering instead "a vague conclusion" purporting to "accept[] the limitations from Dr. Holbrook that were 'consistent with the overall record'" and (2) relying on the opinions of state-agency psychologists, who did not review all of claimant's medical records. (*Id.* at 12, 14.) The government responds that "the ALJ appropriately explained her analysis of Dr. Holbrook's opinions, and her rationale was supported by substantial evidence" because (1) Holbrook's 2016 checklist opinion revealed that she did not know how limited claimant was; (2) the extreme limitations proposed were inconsistent with the record generally, including medical records noting normal demeanor and appearance and activities of daily living, including part-time work, outdoor activities and household tasks; and (3) Holbrook's 2017 opinion was "largely blank." (Def.'s Opp'n

11

(dkt. #8) 8-10.)[4] Finally, the government argues that the "ALJ provided sufficient reasoning for granting greater weight to the opinions of the reviewing physicians." (*Id.* at 12.)[5]

Under the treating physician rule, 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion is generally entitled to controlling weight if it is consistent with the record.[6] *See also Stephens*, 888 F.3d at 328 ("A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." (quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000))). The ALJ did not improperly discount Dr. Holbrook's 2016 opinions because they were not entirely consistent with the record. Holbrook's opinions that claimant had "[d]ifficulty thinking or concentrating"; "[e]asy distractability"; "[h]yperactivity"; "moderate-to-marked" limitations in her ability to "[m]aintain attention and concentration for extended periods"; and "marked" limitations in her ability to work with or near others without being distracted or distracting them (AR 618-19) are inconsistent with Holbrook's treatment records. While claimant's earliest medical record notes that she "reports that she struggles to pay attention" and "is easily distracted" (AR 358), that record -- as well as numerous others -- report that her

---

[4] The government provides additional reasons for the ALJ to discount Holbrook's 2015 opinions, and claimant has not disputed those findings. (*See* Def.' Opp'n (dkt. #9) 2 n.1.)

[5] The government's concern that the logical result of claimant's argument about the state-agency physicians "is that only opinions that are given once the record is complete are relevant" (dkt. #8 at 11-12) is so silly, it does not warrant a response.

[6] The treating physician rule only applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1520c.

12

attention/concentration was "clinically intact" and that she was "able to participate in the interview with no more than average distractability" (*see e.g.*, AR 361, 382, 389, 479, 588, 629, 645, 650, 662, 668, 672). Additionally, as the ALJ noted, Holbrook often answered that claimant's possible limitations were "Unknown" to her. (AR 619.) The "partial weight" given to Holbrook's opinions appears reasonable and does not warrant remand. Likewise, the ALJ's treatment of the state agency psychologists' opinions does not warrant remand because their opinions are generally consistent with the medical record.

### B. Claimant's Testimony

Next, claimant criticizes the ALJ's treatment of her testimony concerning her subjective symptoms, explaining that ALJ Meachum's conclusion that her statements about the "intensity, persistence, and limiting effects of her symptoms [were] 'not entirely consistent with the medical'" were "patently wrong." (Pl.'s Br. (dkt. #7) 17.) Claimant adds that her activities of daily living do not support the conclusion that she could work full-time. (*Id.* at 18.) She also argues that her "sporadic work history is not persuasive evidence that her statements are not supported by the record." (*Id.*) The government argues that the ALJ's assessment of claimant's testimony was not improper and that the ALJ evaluated her claims as required under the regulations. (Def.'s Opp'n (dkt. #8) 13.) The government adds that "the ALJ's description was neither unfair nor unreasonable; she recognized documented abnormalities while also noting that they were either contradicted or outnumbered by other normal findings, and that any abnormalities therefore did not

13

rise to the level of being disabling." (*Id.* at 15.)[7] Likewise, the government contends that the ALJ "reasonably noted that Plaintiff participated in outdoor activities such as hiking, using four-wheeled off[-]road vehicles and going camping"; completed household chores like laundry, cleaning, shopping, childcare and cooking; and sought employment after her husband became unemployed. (*Id.* at 15-16.) As to claimant's work history, the government contends that the ALJ reasonably noted it and did not improperly draw conclusions about claimant's character therefrom.

This, too, is not a reason to remand. The ALJ clearly explained why she found claimant's statements about the "intensity, persistence and limiting effects" of her symptoms to be "not entirely consistent with the . . . evidence in the record" (AR 22-24), and these findings are supported. For example, claimant indicated that she would "do what's necessary to support [her] children," that "[i]f [she] had to" she could work more hours, and that she had returned to work after her husband lost his job because she "had to step up." (AR 52-53.) Claimant testified to completing household chores and assisting with household finances. (AR 53-54; *see also* AR 251-52.) Claimant's auditory hallucinations were only reported shortly before her social security hearing, even though at that time she said that they "tend[] to come and go," and had started "at least a few years back." (AR 693; *accord e.g.*, AR 361, 689, 683 (noting "no evidence of delusions or

---

[7] Claimant contends that "[a] normal finding to an expert is helpful in making an assessment of a patient's diagnoses and treatment," such that a layperson ALJ "is simply not competent to say that what he or she perceives as a 'normal' finding in isolation when contradictory to a diagnosis or conclusion by someone who is trained in a medical field." (Dkt. #9 at 3.) The ALJ's decision was not solely a layperson's interpretation, rather it was based in no small part on the medical opinions of the state agency psychologists.

paranoia, no hallucinations reported, no behavior suggests response to internal stimuli").) Accordingly, this also is not a basis for remand.

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying claimant Krystal Brooks' application for disability and supplemental security income benefits is AFFIRMED. The clerk of court is further directed to enter judgment for defendant and close this case.

Entered this 25th day of September, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge